UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES SANDERS,<br>Petitioner,<br>v.<br>W. MONTGOMERY, Warden,<br>Respondent. | Case No. EDCV 16-01875-CJC-(KES)<br><br>FINAL REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

This Report and Recommendation ("R&R") is submitted to the Honorable Cormac J. Carney, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

**I.**

**INTRODUCTION**

On September 1, 2016, Petitioner filed his Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 (the "Petition"). (Dkt. 1.) Petitioner is a California state prisoner currently serving an aggregate sentence of thirty-one years to life following his conviction on multiple charges including being

a felon in possession of a firearm.[1] (Petition at 2.) Petitioner seeks federal habeas relief from the state court's refusal to resentence him under California Penal Code § 1170.126, the Three Strikes Reform Act.

Respondent filed an answer to the Petition on October 26, 2016. (Dkt. 7.) Petitioner filed a traverse on January 17, 2017. (Dkt. 13.) On March 21, 2017, the Court issued an initial R&R recommending denial of the Petition. (Dkt. 15.) The Court found that Ground One failed to present a federal constitutional claim, because it alleged only that Petitioner was improperly denied resentencing as a matter of state law. (Id. at 7-9.) Petitioner objected to this finding, arguing that the Court had "misconstrued" Ground One, which he says was intended to raise a "violat[ion] [of] his due process rights under the 14th Amendment to the United States Constitution." (Dkt. 18 at 2.)

The Court now issues this final R&R addressing Petitioner's objection. For the reasons discussed below, the Court again recommends that both of Petitioner's grounds for habeas relief should be denied and the Petition dismissed with prejudice. Ground One either does not raise a federal issue or, to the extent it can be interpreted as raising a federal due process claim, fails to show that the state courts acted arbitrarily in applying California sentencing law. Ground Two does not establish that the state courts unreasonably applied Apprendi v. New Jersey, 530 U.S. 466 (2000).

## II.

## FACTUAL AND PROCEDURAL HISTORY

In 2011, a Riverside County jury found Petitioner guilty of a number of crimes, including residential burglary, child endangerment, and unlawful possession of a firearm by a felon. The Court adopts the following excerpts from the California

---

[1] Petitioner was convicted under California Penal Code § 12316(b)(1). (Lodged Document ["LD"] 2 at 2.) That statute was subsequently repealed and replaced by Penal Code § 29800.

2

Court of Appeal's opinion as a fair and accurate summary[2] of the evidence presented at trial:

> On July 14, 2009, [Petitioner] entered a Shell gas station store in Moreno Valley and made a purchase using a credit card in the name of David Sheffey. [Petitioner] left the credit card at the gas station. Because [Petitioner] was a regular customer, gas station manager Bonita Manalakos held the credit card for [Petitioner] in her office, together with the transaction receipt.
>
> On July 20, 2009, [Petitioner] returned to the gas station and attempted to make a purchase using another credit card in Sheffey's name. [Petitioner] also presented a driver's license with his own photograph, but in Sheffey's name. Cashier Amanda Cardenas came into Manalakos's office to retrieve the credit card [Petitioner] had left on July 14. At that time, Manalakos noticed that the card number on the July 14, 2009, transaction receipt did not match the number embossed on the credit card [Petitioner] had used and left at the store on that date. Based on her training, Manalakos concluded that the credit card was invalid. Manalakos told Cardenas not to return the card to [Petitioner], and to stall him while she called the police. Manalakos then walked up to the cash register and asked [Petitioner] to show his identification again. [Petitioner] demanded that Manalakos return his card and quickly left the store. Cardenas wrote down the license plate number of [Petitioner]'s car and provided it to the police.
>
> Police tracked [Petitioner]'s car to a residence located near the gas station. There, police found [Petitioner] crouched down in the doorway of an upstairs bedroom. Near the doorway, and near a bed where a child was lying, police found a loaded semiautomatic firearm in a ready-to-fire position, and an unloaded

---

[2] The Court of Appeal's factual determinations concerning the underlying crimes "shall be presumed to be correct," with the Petitioner having the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e). The Petitioner has not attempted to rebut the Court of Appeal's factual findings.

3

*revolver. Inside the bedroom, police also found a briefcase containing 43 credit cards in other people's names, including Sheffey's; 13 blank credit cards; two credit card readers used to imprint information on a credit card's magnetic strip; 14 USB drives containing lists of hundreds of credit card numbers, names and expiration dates; a laptop computer used to view the USB drives with the user name "dirtred"; and a wallet containing the driver's license [Petitioner] had presented at the Shell gas station in Sheffey's name. Police also found men's clothes and a medical marijuana card in [Petitioner]'s name with his photograph in the bedroom.*

*During a field show-up outside [Petitioner]'s home, both Manalakos and Cardenas identified him as the person who had come to the gas station and presented the credit cards in Sheffey's name.*

*After his arrest, [Petitioner] admitted to police that he lived at the house where the police found him; the firearms in the house belonged to him; the guns probably were stolen as he bought them off the streets; he was not David Sheffey; he had tried to use a credit card that did not belong to him at the Shell gas station; he had identification in Sheffey's name because "I was doing something illegal"; and he had purchased the fake identification card in Sheffey's name off the streets in downtown Los Angeles. [Petitioner] had the same tattoos as the suspect shown on the gas station's surveillance video.*

*The parties stipulated that [Petitioner] was also known by the nickname "Dirty Red." The parties also stipulated that prior to July 14, 2009, [Petitioner] had been convicted of a violent felony.* (Lodged Document ["LD"] 2 (appellate case no. E054155) at 4-6; People v. Sanders, 2012 Cal. App. Unpub. LEXIS 6665, at *4-7 (Cal. App. 4th Dist. Sept. 13, 2012).

At sentencing, the trial court determined that Petitioner had previously been convicted of two crimes that qualified as strikes under California's three strikes law. (LD 2 at 2-3; LD 9 (appellate case no. E061488) at 3; People v. Sanders, 2015 Cal. App. Unpub. LEXIS 5641, at *3-4 (Cal. App. 4th Dist. Aug. 6, 2015). The court

struck one of the two strike allegations for some purposes, but applied it when sentencing on Count 4 for unlawful possession of a firearm, making that crime a "third strike" offense. (LD 4 at 6-7 [reporter's transcript of sentencing hearing].) The court sentenced Petitioner to an indeterminate term of twenty-five years to life under the three strikes law, plus a determinate term of six years for the remaining crimes and allegations. (Id. at 9.)

While Petitioner was serving his prison term, in late 2012, the voters of California passed Proposition 36, the Three Strikes Reform Act (the "Act"), codified at California Penal Code section 1170.126. (LD 9 at 3-4.) The Act altered three strikes sentencing law, including permitting some prisoners to be resentenced as two strikers, based in part on the nature of their qualifying convictions. (Id.)

Petitioner filed a petition for resentencing in the trial court, claiming to be eligible under the Act. The court of appeal described the relevant resentencing procedures as follows:

*On January 29, 2013, [Petitioner] filed a petition for resentencing under [California Penal Code] section 1170.126. On April 24, 2013, the People filed an opposition to [Petitioner]'s petition for resentencing. The People opposed the petition on the ground that [Petitioner] was statutorily ineligible for resentencing under the Act because during the commission of his commitment offenses, [Petitioner] was armed with a firearm. On May 1, 2013, [Petitioner] filed a resentencing brief. On May 2, 2013, the trial court found [Petitioner] eligible for resentencing under section 1170.126, despite [Petitioner]'s conviction for being a felon in possession of a firearm.*

*On February 11, and April 29, 2014, the People filed a motion and a supplemental motion, respectively, to reconsider the trial court's ruling finding [Petitioner] eligible to be resentenced under the Act. [Petitioner] subsequently filed opposition motions.*

*The trial court heard the People's motion to reconsider its ruling on June 24,*

*2014. Following argument, the trial court recalled its previous ruling and found [Petitioner] ineligible for resentencing under section 1170.126, because during his commitment offenses, [Petitioner] had a loaded firearm capable of ready access and was therefore armed with a firearm.* (LD 9 at 4-5.)

Petitioner filed an appeal with the California Court of Appeal. (LD 5.) The court of appeal denied Petitioner's claims. (LD 9.)

Petitioner sought further review from the California Supreme Court, but that court denied his petition for review. (LD 10, 11.)

## III.
## CLAIMS

Petitioner asserts two grounds for relief:

<u>Ground One</u>: The sentencing court improperly denied Petitioner's request for resentencing in violation of his federal due process rights. (Petition at 5, ¶ 7(a).)

<u>Ground Two</u>: The sentencing court's determination that Petitioner was ineligible was constitutionally deficient (i.e., a violation of his Sixth Amendment right to a jury trial) because it was based on facts never pleaded nor proved beyond a reasonable doubt. (<u>Id.</u> at ¶ 7(b).)

## IV.
## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

6

presented in the State court proceeding.

28 U.S.C. § 2254(d). The "clearly established Federal law" that controls federal habeas review of state court decisions consists of holdings (as opposed to dicta) of Supreme Court decisions "as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000).

Here, the California Court of Appeal issued a reasoned opinion on direct Appeal. (LD 9.) The court rejected Grounds One and Two on the merits. (Id.) The California Supreme Court summarily denied review. (LD 11.) Accordingly, for purposes of applying AEDPA's standard of review, the California Court of Appeal decision is the relevant state court adjudication on the merits. See Berghuis v. Thompkins, 560 U.S. 370, 380 (2010) (where state supreme court denied discretionary review of Court of Appeal's decision on direct appeal, the appellate decision on direct appeal is the relevant state court decision for purposes of the AEDPA standard of review).

## V.

## DISCUSSION

### A. Ground One Fails to Raise a Federal Constitutional Claim.

Petitioner contends that he was denied due process when the state court rejected his petition for resentencing, because he qualified for resentencing under the Act. (Petition at 5, ¶ 7(a).) The Petition states that this argument was raised on direct appeal to the California Court of Appeal and the California Supreme Court. (Id.)

As a matter of state law, to be eligible for resentencing, a petitioner's current crime cannot be a felony classified as "serious" or "violent" under state law. (LD 9 at 4, citing Cal. Pen. Code § 1170.126(e).) California law does not define Petitioner's current relevant conviction, possession of a firearm by a felon, as a serious and/or violent felony. (LD 9 at 7, citing statutes.) A second provision of the Act, however, disqualifies a petitioner if "[d]uring the commission of the current offense, the defendant used a firearm [or] was armed with a firearm or deadly weapon …." Cal.

Pen. Code § 667(e)(2)(C)(iii); see also Cal. Penal Code § 1170.126(e)(2) (citing § 667(e)(2)(C)(ii) as an offense rendering one ineligible for resentencing).

Petitioner argues that he was not "armed" during the commission of the offense of "felon in possession" within the meaning of the Act, and that the state courts erred when they determined that he was by applying the Act to the largely undisputed facts.

### 1. Relevant State Court Appellate Proceedings.

On appeal, Petitioner's appointed counsel argued that the order denying the petition to recall Petitioner's sentence must be vacated, because his third-strike conviction was neither a violent nor serious felony and Petitioner was not armed with a firearm during its commission. (LD 5 at 11-15.) Focusing on statutory construction, counsel argued that the Act intended to make resentencing available to inmates if their "third strike" was neither violent nor serious. (Id., citing Cal. Pen. Code § 667(e)(1)). California law does not define "felon in possession of a firearm" as a violent or serious felony. (Id., citing Cal. Pen. Code §§ 667.5(c) and 1192.7(c)). Therefore, counsel argued, it should require more than mere conviction for unlawful possession of a firearm – a crime for which possession of a firearm is an element – to render an inmate ineligible for resentencing. Counsel argued that Petitioner "was not armed *during* the commission of any offense, because his being armed was *identical* with the current offense, not in additional to and contemporaneous with it." (LD 5 at 15, emphasis in original.)

The State countered that it is possible to be "in possession" of a firearm and not "armed" with it, citing as an example someone who keeps his gun in a storage locker. (LD 6 at 3.) The State argued that Petitioner was "in possession" of the guns because he purchased and owned them, and he was "armed" during the commission of the offense because at the time of his arrest, he was within reaching distance of a loaded gun. (Id. at 7.)

After a lengthy review of California case law, the California Court of Appeal resolved that a defendant could be "armed" with a firearm during the crime of

unlawful possession of a firearm by a felon. (LD 9 at 11-17.) Having determined this threshold question, the remaining question was whether Petitioner was, in fact, "armed" during the commission. The Court of Appeal affirmed the resentencing court's finding that he was, reasoning as follows:

> *[Petitioner] was found within reach of two firearms, one loaded in a ready-to-fire position. Officer Sabolchic found [Petitioner] crouched down in the doorway of a bedroom, with his hands hidden behind the doorframe. Officers later found the two firearms near the bed frame. [Petitioner] admitted that the firearms belonged to him and that he had "bought them off the streets."* [LD 3, CT 252-253.] *In sum, [Petitioner's] close proximity to a loaded ready-to-use firearm and an unloaded firearm, along with evidence that his hands were hidden behind the bedroom doorframe near where the guns were found, allowed for a reasonable inference that [Petitioner] was armed with a firearm.* (LD 9 at 19.)

In his petition for review to the California Supreme Court, Petitioner argued that the denial of resentencing violated the Due Process Clause of the U.S. Constitution and labeled this claim "federal." (LD 10 at 8.) In support, Petitioner cited two U.S. Supreme Court cases: Pulley v. Harris, 465 U.S. 37, 41 (1984) (holding that defendant's death sentence was not disproportionate to his crimes) and Addington v. Texas, 441 U.S. 418, 424 (1979) (noting that in criminal cases the state must prove guilt beyond a reasonable doubt). (LD 10 at 9, 11.)

### 2. To the Extent Ground One Argues that Petitioner was Improperly Sentenced under California Law, this Issue is Not Cognizable on Federal Habeas Review.

"It is not the province of a federal habeas court to reexamine state court determinations on state law questions." Wilson v. Corcoran, 562 U.S. 1, 5 (2010) (quoting Estelle v McGuire, 502 U.S. 62, 67-68 (1991)). "Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief." Christian v. Rhode, 41 F.3d 461, 469 (9th Cir.

1994). Thus, on federal habeas review, the relevant question "is not whether the state sentencer committed state-law error," but whether the sentence imposed on the petitioner is "so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation." Richmond v. Lewis, 506 U.S. 40, 50 (1992).

Here, Petitioner largely argues that the California courts misinterpreted the California Three Strikes Act. The state courts' interpretation of state law, however, binds a federal court sitting in habeas corpus. Bradshaw v. Richey, 546 U.S. 74, 76 (2005). The Ninth Circuit has consistently refused to consider state law errors in the application of state sentencing law. See Brown v. Mayle, 283 F.3d 1019, 1040 (9th Cir. 2002) (petitioner's claims that he was entitled to resentencing to allow the state trial court to consider striking prior convictions is not cognizable on federal habeas review), vacated on other grounds by Mayle v. Brown, 538 U.S. 901 (2003); Miller v. Vasquez, 868 F.2d 1116, 1118-19 (9th Cir. 1989) (refusing to examine state court's determination that a prior conviction was a "serious" felony). Similarly, in the specific context of resentencing, a state court's refusal to reverse a sentence on state grounds is not reviewable in federal habeas. Hendricks v. Zenon, 993 F.2d 664, 674 (9th Cir. 1993) ("[W]e hold Hendricks's claim regarding merger of convictions for sentencing is exclusively concerned with state law and therefore not cognizable in a federal habeas corpus proceeding.").

### 3. To the Extent Ground One Alleges a Violation of Due Process, Petitioner is Not Entitled to Habeas Relief.

In his objections to the initial R&R, Petitioner argues that Respondent and the Court misinterpreted Ground One as raising only state law claims, citing his traverse as proof that he was attempting to raise a violation of federal law. (Dkt. 18.) In the traverse, in response to Respondent's contention that Ground One failed to raise a cognizable federal issue, Petitioner argued, "[T]he sentencing court's rejection of his request for resentencing amounted to an arbitrary/fundamentally unfair application of California sentencing law…." (Dkt. 13 at 5-6 [citing, among other cases,

Richmond and Christian].) Additionally, Ground One of the original Petition cites "DUE PROCESS – U.S. Const. 14th Amend." (Petition at 5, 6.) The Court has a duty to construe the Petition liberally, since it was filed pro se.[3]

To the extent Ground One raises a federal due process claim, Petitioner is not entitled to relief. Petitioner has not shown that his sentence is fundamentally unfair, or that the state courts arbitrarily applied state law. The California Court of Appeal carefully and thoroughly considered Petitioner's argument that he was not "armed" during the commission of the offense of "felon in possession" within the meaning of the Act. (LD 8.) The fact that the Court of Appeal disagreed with Petitioner does not render its conclusion arbitrary or capricious. Compare Bell v. Paramo, 16-0727, 2017 WL 1194729, at *6 (S.D. Cal. Jan. 13, 2017) (finding habeas petitioner had "not shown any arbitrariness in the state appellate court rejection of his statutory construction argument").

Accordingly, to the extent Ground One can be interpreted as raising a federal due process claim, it nevertheless fails to show Petitioner is entitled to relief.

**B.** **The Sixth Amendment Does Not Require Jury Fact-Finding to Decide Resentencing Eligibility.**

In ground two, citing Apprendi v. New Jersey, 530 U.S. 466 (2000), Petitioner contends that the state court's determination that he was ineligible for resentencing denied him the right to fact-finding by a jury under the standard of beyond a reasonable doubt. (Pet. at 5, ¶ 5b.) Apprendi held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed

---

[3] As noted above, Petitioner's petition for review in the California Supreme Court did not argue that the sentence was arbitrary or capricious, but rather cited U.S. Supreme Court cases discussing the proportionality of a death penalty sentence and the beyond-a-reasonable-doubt standard of proof in criminal cases. (LD 10 at 8-9, 11.) However, given Respondent's admission that Petitioner has exhausted state remedies (Dkt. 7 at 2), the Court assumes that Petitioner has exhausted the arbitrary/capricious argument discussed here.

1 | statutory maximum must be submitted to a jury, and proved beyond a reasonable
2 | doubt." 530 U.S. at 490.

The state court rejected this claim because Apprendi does not apply to "downward sentence modifications due to intervening laws." (LD 9 at 19-21, citing Dillon v. United States, 560 U.S. 817, 828 (2010) (federal procedure for resentencing "represents a congressional act of lenity" and Sixth Amendment jury trial right does not apply).)

Apprendi, by its terms, applies to facts that *increase* a sentence beyond the statutory maximum. It provides no direction to the state courts regarding a *decrease* to a sentence under a new state law conditionally granting leniency to some prisoners. Thus, a grant of relief to Petitioner would require an extension of the principle of Apprendi to a new context. Under AEDPA, however, 28 U.S.C. § 2254(d)(1) does not require state courts to extend United States Supreme Court precedent, and the federal courts may not treat failure to do so as error. There can be no claim based on an unreasonable failure to extend. White v. Woodall, __ U.S. __, 134 S. Ct 1697, 1706-07 (2014) ("[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no fair-minded disagreement on the question[.]").

Because the state court's rejection of Ground Two was neither contrary to nor an unreasonable application of United States Supreme Court precedent, Petitioner is not entitled to habeas relief.

//
//
//
//
//
//
//

## VI.

## RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Judge issue an Order: (1) accepting this Report and Recommendation, and (2) directing that Judgment be entered denying the Petition and dismissing this action with prejudice.

DATED: June 29, 2017

_____
KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

## NOTICE

Reports and Recommendations are not appealable to the Court of Appeals, but are subject to the right of any party to timely file Objections as provided in the Federal Rules of Civil Procedure and the instructions attached to this Report. This Report and any Objections will be reviewed by the District Judge whose initials appear in the case docket number.